**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$285,450.00 IN UNITED STATES CURRENCY,<br><br>    Defendant. | 3:20-CV-703-MMD-CLB<br><br>**Default Judgment of Forfeiture and Final Judgment of Forfeiture** |

**I.    FACTS**

On June 23, 2020, at approximately 7:00 A.M., a detective employed by the Reno Police Department was monitoring parcels being processed by a FedEx facility in Reno, Nevada. The detective was investigating parcels for indicators that their contents were related to criminal activity. The detective was acting with permission from FedEx.

The detective identified a heavily taped FedEx-brand parcel.

The parcel's label revealed the following:

    a. The sender was listed as J. Eckert;

    b. J. Eckert had a Frederick, Maryland address;

    c. J. Eckert had a Georgia phone number;

    d. The parcel's origin was Frederick, Maryland;

    e. The recipient was listed as Patton;

    f. Patton had a Reno, Nevada address;

    g. Patton had a New York phone number;

    h. The parcel had been shipped on June 22, 2020 and was scheduled for standard overnight delivery by 8:00 P.M. on June 23, 2020;

       i. The parcel's dimensions were twenty-three by seventeen by twelve inches; and

       j. The parcel weighed sixty-five pounds.

The detective called the sender's number. A male answered. When the detective asked for J. Eckert, the call was disconnected. The detective tried calling back numerous times, but there was no further answer.

A backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine did not alert to the parcel.

The detective called the recipient's number. Patton answered and identified himself. Patton confirmed that he was expecting the parcel. When the detective advised Patton that he (the detective) was investigating parcels for illegal drugs and drugs-related money, Patton volunteered that the parcel contained currency.

The detective asked Patton for his consent to open the package. Patton granted consent.

Inside the parcel, investigators discovered an Eylar-brand hard-sided black plastic suitcase. The suitcase was secured by two combination locks.

The detective asked Patton for consent to open the suitcase, and Patton initially stated that he did not know the combinations to the locks. When the detective followed up and asked Patton for permission to otherwise remove the locks, Patton declined.

When asked whether he knew what the currency was to be used for, Patton responded that he did not know. When asked whether he knew how much currency was inside the suitcase, Patton responded that he did not. Patton then stated that the parcel was not ultimately intended for him; he explained that he would be delivering it to a third party. The phone call ended.

In the illegal-drugs trade, it is common for currency couriers to be unaware of the amount of currency entrusted to their possession.

Investigators, joined by a DEA agent, visited the recipient's address, in Reno, Nevada. There, investigators made contact with Talon Jesson. Jesson stated that Patton

resided at the address but was currently in Las Vegas, Nevada. Investigators then left the address.

The detective again contacted Patton and asked him whether he would meet to discuss the package. Patton declined to do so. Patton then communicated that, contrary to his earlier statement that he was planning to deliver the parcel to a third party, a third party was instead going to pick it up from him. Patton asserted that he believed that the currency's ultimate destination was a CBD and hemp farm in southern Oregon. When asked for further details, Patton provided none. The phone call ended.

Later that day, investigators learned that the recipient's address was a residence of interest in an ongoing DEA investigation.

Further, investigators learned that both the sender's and recipient's phone numbers were involved in prior DEA investigations.

On June 24, 2020, the detective obtained and, with the assistance of other investigators, executed a search warrant for the suitcase that had been found in the parcel.

Inside the suitcase, investigators discovered three large Mylar bags. Each Mylar bag, in turn, contained numerous packages wrapped in aluminum foil. After peeling away the aluminum foil, investigators found stacks of rubber-banded currency contained in vacuum-sealed food-preservation bags.

The packaging and organization of the currency was consistent with the manner in which currency involved in the illegal-drugs trade is often packaged and organized to attempt to avoid olfactory and scanning detection.

The canine officer from the previous day again deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the odor of illegal drugs coming from the vacuum-sealed bags of currency.

The DEA took custody of the currency.

A later official bank count determined that the currency totaled $285,450. The currency was composed of the following denominations:

    a.  $5 in $1 bills (5 bills);

    b. $565 in $5 bills (113 bills);

    c. $2,380 in $10 bills (238 bills);

    d. $282,000 in $20 bills (14,100 bills); and

    e. $500 in $50 bills (10 bills).

Currency involved in the illegal-drugs trade is often composed heavily of small denominations.

During the investigation, the DEA learned of a recent matter in the Medford, Oregon area involving Patton. The details of that investigation were as follows:

    a. On January 29, 2020, Old Dominion Freight Lines delivered two new empty shipping containers to Patton at a Cave Junction, Oregon address.

    b. Cave Junction is located in southwestern Oregon.

    c. When delivering the empty shipping containers, the Old Dominion employee found Patton waiting with a truck and noted that the only residence on the property was an uninhabitable mobile home.

    d. On January 30, 2020, Patton dropped off the two shipping containers, now filled, to Old Dominion's terminal.

    e. Patton arranged for the containers to be sent from Oregon to Tampa, Florida, paid the quoted shipping price of $744.36, and advised Old Dominion that the containers were filled with machine parts.

    f. Patton further advised Old Dominion that he wished to set up an account, as he would be sending shipments to Florida at least twice per month.

    g. After Patton left the terminal, Old Dominion employees smelled the odor of marijuana emanating from Patton's shipment and, because of that, contacted the police.

    h. When the police arrived, they deployed a drugs-detection canine in the terminal, and the canine led them to, and alerted to the presence of illegal-drugs emanating from, Patton's crates.

/ / /

   i. On the shipping manifest for Patton's crates, Patton had listed a New York telephone number.

   j. That telephone number was the same telephone number that would later be listed for Patton on the FedEx parcel in Nevada.

   k. Police obtained and executed a search warrant on Patton's crates.

   l. The crates were lined with Visqueen plastic sheets.

   m. In the crates, police discovered approximately 200 pounds of marijuana packaged in one-pound heat-sealed bags, which in turn were grouped into tied-off black trash bags containing twenty marijuana bags apiece.

The $285,450 in United States currency is the entirety of the defendant currency.

## II. PROCEDURE

On February 19, 2021, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 3, alleging the $285,450 (defendant property):

   a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

   b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

   c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and

   d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified

unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

On March 2, 2021 the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 5, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 6.

Pursuant to the Order, ECF No. 5, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 3, the Order, ECF No. 5, the Summons and Warrant, ECF No. 6, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 3; Order for Summons and Warrant, ECF No. 5; Summons and Warrant, ECF No. 6.

On March 10, 2021, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. ECF No. 10-1, p. 2.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from March 4, 2021, through April 2, 2021, and May 13, 2021, through June 11, 2021. Notice of Filing Proof of Publication, ECF Nos. 11-1, p. 5 and 14-1, p. 5.

On May 10, 2021, the United States Attorney's Office served and attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on J. Eckert by regular and certified mail, respectively. The certified mail was returned as attempted not known and unable to forward. Notice of Filing Service of Process – Mailing, ECF No. 15-1, p. 3, 5-6, 8-21, 23-26.

On May 10, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on FedEx by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 15-1, p. 3, 5-6, 8-21, 27-29, 33.

On May 10, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Talon Jesson by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 15-1, p. 3, 5-6, 8-21, 30-33.

On March 8, 2021, the United States filed a Settlement Agreement for Entry of Judgment of Forfeiture as to Thomas Patton and Order, regarding the $285,450 in United

/ / /

States Currency. Claimant waived, among other things, service of process. Settlement Agreement, ECF No. 7.

On April 14, 2021, the Court entered the Order granting the Settlement Agreement for Entry of Judgment of Forfeiture as to Thomas Patton, and Order. Order Granting Settlement Agreement, ECF No. 12.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On July 30, 2021, the United States filed a Motion for Entry of Clerk's Default against the $285,450 in United States Currency, J. Eckert, FedEx, Talon Jesson, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 16.

On July 30, 2021, the Clerk of the Court entered a Default against the $285,450 in United States Currency, J. Eckert, FedEx, Talon Jesson, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Entry of Clerk's Default, ECF No. 17.

The United States, after exercising due diligence, was unable to locate identifiers for J. Eckert that would allow it to confirm that person's existence and, by extension, status under the Servicemembers Civil Relief Act of 2003.

Talon Jesson is not in the military service within the purview of the Servicemembers Civil Relief Act of 2003.

Talon Jesson is neither a minor nor an incompetent person.

Thomas Patton is neither a minor nor an incompetent person.

**III.   THE REQUIREMENTS FOR DEFAULT WERE MET.**

    **A.   Legal Standard**

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and

personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

    **B.**    **The Forfeiture Requirements for Default Were Met.**

        a.   <u>Judgment Sought</u>

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

        b.   <u>Default and Entry of Default</u>

As shown above, the United States requested entry of Clerk's Default against the $285,450 in United States Currency, J. Eckert, FedEx, Talon Jesson, and all persons or

9

entities who may claim an interest in the defendant property in the above-entitled action. ECF No. 16. The Clerk entered the Default as requested. ECF No. 17.

      c.   Notice

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF Nos. 11 and 14. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. ECF No. 15.

      d.   Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint identified the statute under which the forfeiture action had been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); ECF No. 3.

      e.   Status of Potential Claimants

Thomas Patton has entered into a Settlement Agreement with the United States. Order Granting Settlement Agreement, ECF No. 12.

No person or entity has filed a claim and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

      a.   The Plaintiff Would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and

that evidence is uncontested by J. Eckert, FedEx, and Talon Jesson. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.")

     b. & c. <u>The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.</u>

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

     d. <u>The Amount of Money at Stake</u>

The value of the defendant property was clearly established in the Complaint, ECF No. 3, and the defendant property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and proceeds traceable to the violations.

     e. <u>There Are No Possible Disputes of Material Fact</u>

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

/ / /

  a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

  b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

  c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and

  d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

  f. <u>Default Was Not the Result of Excusable Neglect</u>

The record shows that the potential claimants were properly served with the Complaint, Order, Summons and Warrant, and the Notice and failed to file a claim and answer to the Complaint. Thomas Patton entered into a Settlement Agreement. There is no evidence of excusable neglect.

  g. <u>Public Policy Does not Prevent Default Judgment</u>

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the potential claimants did not file a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.
>
> *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, the potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

**IV.     JUDGMENT**

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to J. Eckert, FedEx, Talon Jesson, and all persons or entities who may claim an interest in the defendant property and Final Judgment of Forfeiture as to the $285,450 in United States Currency and Thomas Patton.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against J. Eckert, FedEx, Talon Jesson, and all persons or entities who may claim an interest in the defendant property in the above-entitled action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $285,450 in United States Currency and Thomas Patton.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

/ / /

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Thomas Patton forfeited all possessory rights, ownership rights, and all rights, titles, or interests in the property to the United States.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

DATED: October 5, 2021